Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII-DJ 2024-062C

| DEPARTAMENTO DE LA VIVIENDA P/C ADMINISTRACIÓN DE VIVIENDA PÚBLICA P/C COST CONTROL COMPANY  *Recurrido*  v.  ELBA I. LABOY COLÓN  *Recurrente* | TA2025RA00039 | Revisión Administrativa procedente del Departamento de la Vivienda  Querella Núm.: Q-AVP-02-2025  Sobre: Actividad Criminal |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de septiembre de 2025.

Comparece ante nos Elba I. Laboy Colón (señora Laboy o recurrente) mediante recurso de *Revisión Administrativa* y solicita la revocación de la *Resolución*[1] emitida el 1 de junio de 2025[2], por el Departamento de la Vivienda (Vivienda o agencia recurrida). En el referido dictamen, Vivienda determinó cancelar el *Contrato de Arrendamiento*[3] de la señora Laboy por incurrir en actividad criminal.

Por los fundamentos expuestos a continuación, se ***confirma*** la *Resolución* impugnada.

**I.**

Según surge del expediente, el 14 de enero de 2025, la agencia recurrida[4] le notificó a la señora Laboy su intención de resolver el *Contrato de Arrendamiento* del apartamento número 166 del edificio

---

[1] Apéndice intitulado *Resolución Recurrida* del recurso de *Revisión Administrativa*.
[2] Notificada el 2 de junio de 2025.
[3] Copia Certificada de Expediente Administrativo, *Contrato de Arrendamiento*, págs. 2-31.
[4] Vivienda, por conducto de su Agente Administrador, Cost Control Company (Cost Control).

número 29 del Residencial Carioca[5]. Esto, debido a una violación al Artículo 18.1.2(vii) del "Reglamento Sobre las Políticas de Admisión y Ocupación Continuada en los Residenciales Públicos de Puerto Rico", Reglamento Núm. 8624, Departamento de la Vivienda, 31 de julio de 2015 (Reglamento Núm. 8624)[6].

Ese mismo día, en aras de preparar el *Estudio Social*[7], la trabajadora social Soleil Marie Negrón Villareal entrevistó a la señora Laboy. Se desprende del *Estudio Social*, que la recurrente admitió haber sido encarcelada del 11 de noviembre al 9 de diciembre de 2024 por maltrato, según el Artículo 3.1 de la "Ley para la Prevención e Intervención con la Violencia Doméstica", Ley Núm. 54 de 15 de agosto de 1989 ("Ley Núm. 54")[8]. De igual forma, se desprendió que, desde la excarcelación, la señora Laboy residía con su hermana bajo supervisión electrónica. Esto, debido a que la orden de protección expedida a favor de la víctima, cuyo domicilio era cercano al Residencial Carioca, le impedía retornar a su apartamento[9].

En atención a lo anterior, en igual fecha y conforme al Reglamento precitado, la recurrente solicitó una vista administrativa para explicar lo sucedido[10]. Así las cosas, el 24 de abril de 2025[11], se celebró la vista administrativa ante la Oficial Examinadora, Yamaris Lugo Reyes (OE Lugo). A la misma, comparecieron la señora Laboy, el Licenciado Roberto Padial Pérez, representante legal de Cost Control y la señora Carla Ortiz, Subadministradora del Residencial Carioca.

---

[5] Copia Certificada de Expediente Administrativo, *Intención de Cancelación de Contrato de Arrendamiento*, pág. 44.

[6] Reglamento vigente al momento de los hechos pertinentes al caso.

[7] Copia Certificada de Expediente Administrativo, *Estudio Social*, págs. 46-48.

[8] 8 LPRA sec. 631. Reclasificado a su tentativa, por acuerdo con el Ministerio Público. Véase, del recurso de *Revisión Administrativa*.

[9] No obstante, a partir del 17 de marzo de 2025, mediante orden judicial se suspendió la supervisión electrónica de la señora Laboy. Véase, Anejo 1 del recurso de *Revisión Administrativa*.

[10] Copia Certificada de Expediente Administrativo, *Solicitud de Vista*, pág. 45.

[11] Copia Certificada de Expediente Administrativo, *Notificación de Vista Administrativa*, págs. 50-51.

Luego de recibidos los testimonios de las partes, la OE Lugo rindió su informe acreditando la credibilidad de los testigos, la prueba documental producida y recomendó cancelar el *Contrato de Arrendamiento*[12]. Evaluado el *Informe de la Oficial Examinadora*, el 1 de junio de 2025[13], la agencia recurrida emitió una *Resolución* en la cual formuló las siguientes determinaciones de hechos:

1. El 18 de agosto de 2020, la Parte Querellada en calidad de arrendatario y la Parte Querellante en calidad de arrendadora, representada en este acto por Cost Control, suscribieron el contrato de arrendamiento por el apartamento número 102 del edificio 17 del Residencial Carioca en Guayama.

2. El 1 de enero de 2023[14], la Parte Querellada en calidad de arrendatario y la Parte Querellante en calidad de arrendadora, representada en este acto por Cost Control, suscribieron el complemento de Contrato de Arrendamiento, por el apartamento número 166 del edificio 29 del Residencial Carioca en Guayama.

3. Surge del Contrato de Arrendamiento, que la Parte Querellada, es Jefa de Familia y su composición familiar la conforman sus dos (2) hijas menores de edad.

4. El 14 de enero de 2025, la AVP por conducto de Cost Control, le notificó a la Parte Querellada, en calidad de Jefa de Familia, una Carta de Intención de Cancelación de Contrato de Arrendamiento, mediante la cual se le informó que su contrato de arrendamiento sería cancelado, por alegada violación al artículo 18.1.2 inciso (vii) del Reglamento Núm. 8624.

5. El 14 de enero de 2025, la Parte Querellada, solicitó la celebración de una Vista Administrativa.

6. El 14 de enero de 2025, la Sra. Soleil M. Negrón, Trabajadora Social, le realizó un estudio social a la Parte Querellada.

7. En dicha entrevista, la Parte Querellada manifestó que estuvo en la cárcel desde el 11 de noviembre hasta el 9 de diciembre de 2024 por violaciones como la Ley 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención contra la Violencia Doméstica", en adelante Ley 54, artículo 3.1 y que actualmente tiene supervisión electrónica ("grillete"). Añadió además que en ese entonces estaba residiendo en la casa de su hermana, toda vez que el tribunal le ordenó guardar distancia de la víctima.

8. El 4 de abril de 2025, la AVP emitió Notificación de Vista Administrativa y señaló la misma para el 24 de abril de 2025 a las 9:00 a.m.

9. El 24 de abril de 2025, se celebró Vista Administrativa

---

[12] Copia Certificada de Expediente Administrativo, *Informe de la Oficial Examinadora*, págs. 53-60.

[13] Notificada el 2 de junio de 2025.

[14] La fecha correcta es el 1 de agosto de 2023, véase Copia Certificada de Expediente Administrativo, *Complemento de Contrato*, págs. 32-41.

ante la Oficial Examinadora, Yamaris Lugo Reyes, mediante el sistema de videoconferencia a través de la plataforma "Zoom".

10. En la mencionada vista, la Parte Querellante, por conducto del Lcdo. Roberto Padial, entre otras cosas, alegó lo siguiente:

a. que la administración del Proyecto, advino en conocimiento que contra la Parte Querellada se había presentado una querella por violación al artículo 3.1 de la Ley 54 supra, lo cual es un delito grave;

b. que, a raíz de ello, fue recluida en una institución penal;

c. que el número del caso criminal es GM2024CR00675;

d. que, al haber incurrido en actividad criminal, se procedió con la intención de cancelación del contrato de arrendamiento;

e. que estuvo recluida desde el 11 de noviembre de 2024 hasta el 9 de diciembre de 2024;

f. que actualmente está residiendo en el Proyecto.

8. En la mencionada vista, la Sra. Carla Ortiz, subadministradora del Proyecto, alegó lo siguiente:

a. que la Parte Querellada está residiendo en el Proyecto;

b. que la víctima ya no vive en el Proyecto.

10. En la mencionada vista, a preguntas de la Oficial Examinadora, la Parte Querellada, respondió, que sí había leído, tanto en el contrato como en el complemento del contrato de arrendamiento, lo relacionado a las obligaciones del arrendatario y a no incurrir en actividad criminal.

a. manifestó además, que actualmente no tiene supervisión electrónica ("grillete"), ya que, en marzo del 2025, se lo removieron como resultado de la vista judicial;

b. que está residiendo en el Proyecto, cumpliendo la probatoria que le impusieron;

c. que está asistiendo a las clases que le impusieron por un (l) año y seis (6) meses;

d. que en marzo de 2025, se llevó a cabo la vista judicial de su caso y que en la misma, el perjudicado de la violación de la Ley 54 firmó un documento que le permitió regresar al Proyecto;

e. que el perjudicado nunca ha vivido en el Proyecto;

f. que actualmente está cumpliendo la probatoria impuesta por el tribunal de un (1) año y seis (6) meses.

11. Surge del expediente administrativo, a través de un correo electrónico del Lcdo. Padial que un (l) mes después de que la Parte Querellada incurrió en la violación al artículo 3.1 de la Ley 54, supra, ésta incurrió nuevamente en actividad criminal, al violar la Ley 284 del 21 de agosto de 1999, según enmendada, conocida como "Ley contra el acecho en Puerto Rico", contra la Sra. Kathiana M. Torres Quiñones, obteniendo la perjudicada una orden de protección en contra de la Parte Querellada. El número del caso criminal es GML2842024-01447.

12. La Sra. Torres, era vecina del Proyecto, pero luego del incidente entregó su unidad de vivienda[15].

---

[15] Apéndice intitulado *Resolución Recurrida* del recurso de *Revisión Administrativa*, págs. 2-5. Se hace constar que las determinaciones de hechos son doce (12) en total, ya que, al momento de redactarlos, el Sub Administrador de Vivienda cometió un error en la secuencia de enumeración.

Inconforme con la determinación, el 1 de julio de 2025, la señora Laboy presentó el recurso ante nuestra consideración junto a una *Moción en Auxilio de Jurisdicción.* Ahora bien, aunque en el recurso la recurrente no señaló un error específico, podemos concluir que imputó la determinación de Vivienda en cuanto a la cancelación del *Contrato de Arrendamiento.*

El 1 de julio de 2025, emitimos una *Resolución* en la cual declaramos *No Ha Lugar* a la *Moción en Auxilio de Jurisdicción* y le concedimos a la agencia recurrida hasta el 31 de julio de 2025 para que presentara su alegato en oposición. En cumplimiento con lo anterior, Vivienda compareció mediante *Escrito en Cumplimiento de Resolución.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[16]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[17]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[18].

Debido a la vasta experiencia y conocimiento especializado

---

[16] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).

[17] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

[18] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[19]. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[20]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[21]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[22].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[23]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[24]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[25].

---

[19] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[20] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

[21] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro, supra*, pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

[22] *Trigo Margarida v. Junta Directores, supra*, págs. 393-394; *Mundo Ríos v. CEE et al.*, 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[23] *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

[24] *Super Asphalt v. AFI y otro, supra*; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra*, pág. 394.

[25] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

Aclaramos que, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[26].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[27]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[28].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[29]. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[30].

---

[26] *OEG v. Martínez Giraud, supra*, pág. 90; *Super Asphalt v. AFI y otro, supra*, pág. 819, citando a *Torres Rivera v. Policía de PR, supra*, pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[27] *González Segarra et al. v. CFSE, supra*, pág. 277; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011).

[28] *González Segarra et al. v. CFSE, supra*; *Pereira Suárez v. Jta. Dir Cond., supra*, pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).

[29] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales, supra*.

[30] *González Segarra et al. v. CFSE, supra*, págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra*, pág. 217, citando a *Rebollo v. Yiyi Motors, supra*.

**-B-**

La Ley Núm. 66 de 17 de agosto de 1989, según enmendada, conocida como la "Ley Orgánica de la Administración de Vivienda Pública de Puerto Rico"[31] (Ley Núm. 66) creó dicho organismo con el propósito de proveer vivienda pública adecuada y de calidad a las personas indigentes. Específicamente, la Administración de Vivienda es la entidad responsable de administrar eficientemente los residenciales públicos y de realojar a las personas residentes de estos cuando ello sea necesario. En esa encomienda, la agencia tiene la facultad de cancelar contratos de arrendamiento de personas beneficiarias de vivienda pública.

Cónsono con las facultades delegadas por la Ley Núm. 66, *supra*, el 31 de julio de 2015, la Administración de Vivienda adoptó el Reglamento Núm. 8624, *supra*. En lo particular, la Sección XVIII del Reglamento Núm. 8624, *supra*, contiene una lista de razones por las cuales la agencia podrá cancelar el contrato de arrendamiento de cualquier beneficiario de vivienda pública. Entre esas razones, establece que la Vivienda dará por terminado el contrato de arrendamiento por actividad criminal[32]. Asimismo, dispone que: "[l]a Administración considerará todas las pruebas creíbles, inclusive, pero sin limitarse a ello, cualquier registro de arresto o condena de las personas cubiertas en relación a la Actividad Criminal"[33].

Finalmente, el Reglamento Núm. 8624, *supra*, provee los criterios para denegar la admisión a los participantes. En lo específico, se estableció que una de las causales que prohíben la admisión de Familias al Programa son las actividades criminales[34].

---

[31] 17 LPRA sec. 1001 nota *et seq.*
[32] "Actividad criminal" significará todo acto o conducta constitutivo de delito penalizado por ley, estatal o federal. Véase, Reglamento Núm. 8624, *supra*, Art. V (iv).
[33] Reglamento Núm. 8624, *supra*, Art. XVIII, sec. 18.1.2. (vii) (a).
[34] Reglamento Núm. 8624, *supra*, Art. X, sec. 10.3.2. (i) (f).

**-C-**

La Ley Núm. 54, *supra,* fe aprobada para combatir uno de los problemas sociales más graves y complejos que confronta nuestra sociedad, la violencia doméstica. Pertinente a la controversia que nos ocupa, el Artículo 3.1 define el maltrato como:

> Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquéllos que pertenecen privativamente al ofensor, o a la persona de otro o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior.

> El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida[35].

**-D-**

La Ley Núm. 284 de 21 de agosto de 1999, según enmendada, conocida como "Ley Contra el Acecho en Puerto Rico"[36] (Ley Núm. 284-1999) fue aprobada con el propósito de "proteger debidamente a personas que son víctimas de acecho, evitando posibles daños a su persona, sus bienes o a miembros de su familia"[37]. Dicho estatuto define el acecho como:

> [...] una conducta mediante la cual se ejerce una vigilancia sobre determinada persona; se envían comunicaciones verbales o escritas no deseadas a una determinada persona, se realizan amenazas escritas, verbales o implícitas a determinada persona, se efectúan actos de vandalismo dirigidos a determinada persona, se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia[38].

**III.**

En el caso de autos la señora Laboy no señaló un error específico, sin embargo, colegimos que imputó la determinación de

---

[35] 8 LPRA sec. 631.
[36] 33 LPRA sec. 4013 nota *et seq.*
[37] *Íd.*
[38] 33 LPRA sec. 4013.

Vivienda en cuanto a la cancelación del *Contrato de Arrendamiento*. No le asiste la razón, veamos.

Como adelantamos en la exposición del derecho, el Reglamento Núm. 8624, *supra*, contiene una lista de razones por las cuales la agencia recurrida podrá cancelar el contrato de arrendamiento de cualquier beneficiario de vivienda pública. Entre esas razones, establece que la agencia dará por terminado el contrato de arrendamiento por actividad criminal[39]. El reglamento define "**Actividad Criminal**" como "**todo acto o conducta constitutivo de delito penalizado por ley, estatal o federal**". (Énfasis nuestro). Asimismo, el Art. XVIII, Sec. 18.1.2. (vii) (a) del precitado reglamento dispone que: "[l]a Administración considerará todas las pruebas creíbles, inclusive, pero sin limitarse a ello, cualquier registro de arresto o condena de las personas cubiertas en relación a la Actividad Criminal"[40].

De otro lado, se desprende del *Contrato de Arrendamiento* suscrito por las partes que:

[...]

D. El Arrendatario cumplirá con la reglamentación promulgada por la Arrendadora para beneficio y bienestar del residencial y sus inquilinos la cual estará disponible en la oficina de administración del residencial.

E. El Arrendatario cumplirá con todas las obligaciones impuestas por reglamentación relacionadas a la salud y seguridad.
[...]

L. El Arrendatario tiene la obligación de asegurar a la Arrendadora que él o ella, ni ningún miembro de la composición familiar, huésped y/o cualquier otra persona bajo su control realicen:

> **(A) Cualquier <u>actividad criminal</u> que amenace la salud, seguridad o derecho al disfrute pacífico del uso de las áreas comunales y vecinales de otro residentes o empleados autorizados por la Arrendadora**. (Énfasis Nuestro).

[...]

---

[39] Reglamento Núm. 8624, *supra*, Art. V (iv).
[40] Reglamento Núm. 8624, *supra*, Art. XVIII, Sec. 18.1.2. (vii) (a).

U. El Arrendatario cumplirá con las normas internas existentes de la Arrendadora y HUD.

[...][41].

Surge del expediente administrativo que a la señora Laboy se le notificó la *Intención de Cancelación de Contrato de Arrendamiento*, toda vez que ésta incurrió en actividad criminal. Específicamente, en la Vista Administrativa, la recurrente admitió haber cometido tentativa de maltrato[42] y acecho. De igual manera, se desprende de las determinaciones de hechos realizadas por Vivienda que:

> [U]n (1) mes después de que la Parte Querellada incurrió en la violación al artículo 3.1 de la Ley 54, supra, ésta incurrió nuevamente en actividad criminal, al violar la Ley 284 del 21 de agosto de 1999, según enmendada, conocida como "Ley contra el acecho en Puerto Rico", contra la Sra. Kathiana M. Torres Quiñones, obteniendo la perjudicada una orden de protección en contra de la Parte Querellada. El número del caso criminal es GML2842024-01447[43].

Es decir, que al mes del incidente de violencia doméstica que motivó la acción de la agencia recurrida, la señora Laboy incurrió en acecho, conducta tipificada como delito según la Ley 284-1999, *supra*, contra otra residente del complejo, quien obtuvo, a su vez, una orden de protección a su favor respecto a la recurrente[44].

Según discutimos en la exposición del derecho, el Reglamento Núm. 8624, *supra*, provee los criterios para denegar la admisión a los beneficiarios del programa de vivienda pública. En lo específico, el mismo estableció que una de las causales que prohíben la admisión de Familias al Programa son las actividades criminales[45]. En el caso de marras, se probó que la recurrente cometió actividades criminales, por lo que, tomando en consideración la reglamentación aplicable, la señora Laboy no es elegible para vivir en el Residencial

---

[41] Copia Certificada de Expediente Administrativo, *Contrato de Arrendamiento*, págs. 16, 18 y 21.
[42] Reclasificado a su tentativa, por acuerdo con el Ministerio Público. Véase, del recurso de *Revisión Administrativa*.
[43] Apéndice intitulado *Resolución Recurrida* del recurso de *Revisión Administrativa*, pág. 5.
[44] Copia Certificada de Expediente Administrativo, *Certificación de Orden de Protección*, págs. 42-43.
[45] Reglamento Núm. 8624, *supra*, Art. X, Sec. 10.3.2. (i) (f).

Carioca. Por ende, determinamos que lo que procede en derecho es cancelar el *Contrato de Arrendamiento* de la recurrente.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, ***confirmamos*** la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones